The POTOMAC ELECTRIC
POWER COMPANY

v.

Stephen H. SACHS, in his capacity as
Attorney General of Maryland, and
Adele Wilzack, in her capacity as Sec-
retary of the Maryland Department of
Health and Mental Hygiene.

Civ. A. No. B–86–220.

United States District Court,
D. Maryland.

April 16, 1986.

Arnold M. Weiner, Michael Schatzow,
Ethan L. Bauman, and Melnicove, Kauf-
man, Weiner & Smouse, P.A., Baltimore,
Md., E. Barrett Prettyman, Jr., Sherwin J.
Markman, John C. Keeney, Jr., David J.
Hayes, and Messrs. Hogan & Hartson, and
Kathleen B. DeWeese, Asst. Gen. Counsel,
Washington, D.C., for plaintiff, The Poto-
mac Elec. Power Co.

Stephen H. Sachs, Atty. Gen. of Mary-
land, Michael C. Powell, Richard M. Hall,
Kathie A. Stein, Charles R. Taylor, and
Ralph S. Tyler, Asst. Attys. Gen. of Mary-
land, for defendants, Stephen H. Sachs, in
his capacity as Atty. Gen. of Maryland, and
Adele Wilzack, in her capacity as Secretary
of Maryland Dept. of Health and Mental
Hygiene.

WALTER E. BLACK, Jr., District Judge.

This action for declaratory judgment
presents the Court with a narrow legal
question of statutory interpretation. Does
the federal Toxic Substances Control Act,
15 U.S.C. § 2601 *et seq.* (TOSCA), preempt
Maryland's regulatory provisions govern-
ing the disposal of polychlorinated biphe-
nyls (PCBs)?

The plaintiff, Potomac Electric Power
Company (PEPCO), seeks to avoid a possi-
ble state criminal enforcement action by
means of a declaratory judgment that all
state regulations relating to PCBs are
preempted by TOSCA. The defendants,
Stephen H. Sachs, Attorney General of
Maryland, and Adele Wilzack, Secretary of
the Maryland Department of Health and
Mental Hygiene, argue that Maryland's
regulations governing disposal of PCBs are
not subject to preemption in light of the
specific exceptions in the preemption provi-
sion of TOSCA.

The matter is before the Court on the
plaintiff's Motion for Summary Judgment.

### I. BACKGROUND

Polychlorinated biphenyls are chemical
substances which have been manufactured

and used commercially for several decades. Due to their chemical stability, fire resistance, and electrical resistance properties, they have frequently been used in electrical transformers and capacitors. In the past, PEPCO used electrical transformers containing this substance.

> PCBs, however, are extremely toxic. "Epidemiological data and experiments on laboratory animals indicate that exposure to PCBs pose carcinogenic and other risks to humans. Experimental animals developed tumors after eating diets that included concentrations of PCBs as low as 100 parts per million (ppm). Experiments on monkeys indicate that diets with PCB concentrations of less than ten ppm reduce fertility and cause still births and birth defects. Other data show that PCBs may adversely affect enzyme production, thereby interfering with the treatment of diseases in humans."

*Environmental Defense Fund v. Environmental Protection Agency,* 636 F.2d 1267, 1270 (D.C.Cir.1980).

Moreover, PCBs accumulate in fish and other aquatic organisms and are virtually indestructible in the environment. Affidavit, of Ronald Nelson, attached to Defendants' Memorandum in support of Motion to Dismiss, at 2.

> Both Congress and the state of Maryland have responded to the grave dangers presented by PCBs. At the federal level, Congress passed TOSCA, which allows the administrator of the Environmental Protection Agency (EPA) to regulate virtually all aspects of PCB manufacture, use and disposal. *See* 15 U.S.C. § 2605(e) (providing a separate provision for PCBs). Indeed, the legislative history of TOSCA indicates that PCBs were a special source of concern to Congress at the time of the passage of the statute. *See* comments of Representative Dingell, explaining Congress' attention to the immediate dangers posed by PCBs, Defendants' Opposition to plaintiff's Motion for Summary Judgment at 21. At the state level, Maryland regulates PCBs as a

hazardous waste under the state's waste management program. By tracking PCBs from "cradle to grave," the state can detect and respond to PCB problems, incidents and spills in the state. Nelson Affidavit, *supra,* at 3.

The present controversy arises out of PCB contamination discovered at a Beltsville, Maryland site used by the United Rigging and Hauling Company (United Rigging) as a salvage yard for electrical transformers. State authorities discovered PCB concentrations in the soil as high as 128,000 parts per million and found that contaminated runoff was entering a nearby creek. Pursuant to their authority under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA or Superfund), 42 U.S.C. § 9601 *et seq.,* state and federal authorities determined that the situation at the United Rigging site posed an imminent and substantial endangerment to public health, welfare, or the environment. PEPCO, whose transformers were found at the site, along with United Rigging, entered into an administrative consent order with state authorities and the EPA to conduct the Superfund cleanup. The cleanup activities resulted in the removal of 10,562 tons of PCB-contaminated soil and 787 electrical transformers. Nelson Affidavit, *supra,* at 5.

In May, 1985, a Prince George's County grand jury began a criminal investigation of the contamination at the United Rigging site. PEPCO has been one of the subjects of that investigation, which has not yet led to any indictments. There is little question from the record, however, that an indictment of PEPCO for alleged responsibility for or participation in the United Rigging contamination is imminent. *See* Defendant's Reply Memorandum in support of Motion to Dismiss at 11–13 n. 10 (providing details of the intention of the Attorney General's Office to prosecute).

PEPCO brought this suit in federal court in an apparent attempt to foreclose the

possibility of a state criminal prosecution. Its argument, in sum, is that TOSCA expressly preempts any state efforts to regulate PCBs, including disposal, and that the state therefore lacks the authority to regulate the substances or to indict a party for mishandling them.

The Court has previously denied the defendants' Motion to Dismiss, or for Summary Judgment, Based Upon Lack of Jurisdiction, or for Stay. The Court found that PEPCO's complaint established federal question jurisdiction under *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983), that the facts presented a live case or controversy, and that federal court abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was inappropriate.[1] Accordingly, the parties proceeded to the merits of the plaintiff's Motion for Summary Judgment, which was fully briefed and presented at oral argument on March 27, 1986.

After full consideration of the arguments presented, the Court is persuaded that the plaintiff's motion must be denied and declaratory judgment entered in favor of the defendants. As discussed below, the matter is ripe for adjudication on summary judgment, and the Court has determined that the Maryland regulations governing disposal of PCBs are not preempted by TOSCA.

## II. SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment can only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Poller v. Columbia*

*Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party to demonstrate clearly that there is no genuine issue of fact and any doubt as to the existence of such an issue is resolved against him. *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.*, 381 F.2d 245, 249 (4th Cir.1967). This burden can be a heavy one; the standard for passing on motions for summary judgment is strict. *Clarke v. Montgomery Ward & Co.*, 298 F.2d 346, 348 (4th Cir.1962). If interpretations of the facts of a case differ, summary judgment is improper. *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979). *See also Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985), where the court determined that summary judgment is proper only when "it is perfectly clear that there are no [factual] issues in the case."

The Court has determined that the narrow legal issues presented by this case are ripe for determination on summary judgment. The primary task before the Court is to determine the intent of Congress when it enacted the preemption provision of TOSCA. None of the facts related to Congress' activities are in dispute. While the parties clearly interpret the legislative history quite differently, the record is complete, and proceeding to trial would do nothing to further illuminate what Congress intended. There are obviously substantial issues of fact relating to the actions which created the contamination at the United Rigging site, but those issues are not before the Court. Rather, the focus of this Court's attention is solely on the preemption provision of TOSCA, 15 U.S.C. § 2617, and the exceptions contained in it. On those issues, there is no dispute of fact.[2] Moreover, as one court has stated,

---

1. At oral argument on the motion for summary judgment, the defendants moved to file an immediate appeal of this Court's ruling on these issues, pursuant to 28 U.S.C. § 1292(b). In light of the dispositive ruling of this opinion, that motion will be denied as moot, and the parties will be free to argue the jurisdictional issues, as well as the merits, on appeal.

2. A possible exception—where a dispute of fact might exist—is in the arguments related to the identity or lack of identity between the Maryland regulations and the federal regulations under the first of the three listed exceptions in § 2617, § 2617(a)(2)(B)(i). If the Court were to rule on that issue, more facts would be needed, in order to examine the regulations item by

"[q]uestions of statutory construction and legislative history traditionally present legal questions properly resolved by summary judgment." *Union Pacific Land Resources Corp. v. Moench Investment Co.*, 696 F.2d 88, 93 n. 5 (10th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1776, 76 L.Ed.2d 348 (1983).

### III. PREEMPTION UNDER TOSCA

"It is well-established that within constitutional limits Congress may preempt state authority by so stating in express terms." *Pacific Gas & Electric v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 203, 103 S.Ct. 1713, 1721, 75 L.Ed.2d 752 (1983), citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In the absence of an express preemption provision, Congress' intent to preempt state law may be found from a pervasive scheme of federal regulation that leaves the states no room to supplement the federal requirements or from a regulatory scheme in which the federal interest is dominant. Even where Congress does not entirely displace state regulation, state law is preempted to the extent that it conflicts with federal law or stands as an obstacle to the accomplishment of the purposes and objectives of Congress. *Pacific Gas & Electric*, 461 U.S. at 203–04, 103 S.Ct. at 1721–22. It should be noted, however, that in certain areas traditionally left to the historic police powers of the State, preemption will be found only if the clear and manifest purpose of Congress is to preempt. *Jones v. Rath Packing*, 430 U.S. at 525, 97 S.Ct. at 1309; *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

In TOSCA, Congress was explicit in addressing the preemption issue by including § 2617. It determined that federal regulations under TOSCA should preempt certain areas of state regulation, but not in situations specifically excepted in the statute.

In effect, by including the exceptions to preemption, Congress left the states a limited role to play in the regulation of toxic substances. The only issue presented here is whether Maryland's PCB disposal regulations come within any of those exceptions.

The preemption section of TOSCA provides in pertinent part as follows:

§ 2617. Preemption

(a) Effect on State Law. (1) Except as provided in paragraph (2), nothing in this chapter shall affect the authority of any State or political subdivision of a State to establish or continue in effect regulation of any chemical substance, mixture, or article containing a chemical substance or mixture.

(2) Except as provided in subsection (b) of this section—

\*　　\*　　\*　　\*　　\*　　\*

(B) if the Administrator prescribes a rule or order under section 2604 or 2605 of this title (other than a rule imposing a requirement described in subsection (a)(6) of section 2605 of this title) which is applicable to a chemical substance or mixture, and which is designed to protect against a risk of injury to health or the environment associated with such substance or mixture, no State or political subdivision of a State may, after the effective date of such requirement, establish or continue in effect, any requirement which is applicable to such substance or mixture, or an article containing such substance or mixture, and which is designed to protect against such risk unless such requirement (i) is identical to the requirement prescribed by the Administrator, (ii) is adopted under the authority of the Clean Air Act or any other Federal law, or (iii) prohibits the use of such substance or mixture in such State or political subdivision (other than its use in the manufacture or processing of other substances or mixtures).

item. The Court, however, does not reach that issue, having concluded that the State must prevail on a separate dispositive issue. The factual issues of the identity of the regulations, therefore, are not in any sense material to the Court's ruling.

The statutory scheme starts with the premise that no state regulation is preempted until the Administrator promulgates a rule governing that substance. Then, once the Administrator promulgates such a rule, state law is preempted unless it comes within the exceptions listed in the statute, of which there are four. The first is contained in the parenthetical clause stating "(other than a rule imposing a requirement described in subsection (a)(6) of section 2605 of this title)"; the remaining three are listed at the end of § 2617(a)(2)(B).

As explained below, the Court finds that the Maryland rules governing disposal of PCBs fall within the parenthetical exception and are therefore not preempted by the federal disposal regulations. It is therefore unnecessary to reach the issues presented by the remaining three exceptions.

## IV. THE PARENTHETICAL EXCEPTION OF § 2617(a)(2)(B)

### A. The Statutory Language.

The defendants and *amici*[3] argue that the plain language of the statute shows that the parenthetical exception contained in § 2617(a)(2)(B) is applicable to PCB disposal regulations, which are therefore not preempted. PEPCO argues that because of the fact that PCBs are treated in a separate provision of the statute (§ 2605(e)), all state PCB regulations—including those relating to disposal—are preempted. Because of the obvious importance of this issue and the conflict in the relevant judicial opinions, the question must be addressed in some detail.

Section 2617(a)(2)(B) provides that if the EPA Administrator prescribes a rule or order under § 2604 or § 2605 applicable to a chemical substance or mixture, designed to protect against a risk of injury to health or environment, then state regulations governing that substance are preempted. There is no question that PCBs are in fact a chemical substance or mixture that presents an "unreasonable risk of injury to health or the environment" under § 2605(a) and that the Administrator has in fact prescribed rules governing PCBs. *See* 43 Fed. Reg. 7150 (1978), codified at 40 C.F.R. Part 761.

The parenthetical exception, however, removes a certain class of state regulations from the preemptive effect of § 2617(a)(2)(B). Specifically, the Administrator's rules imposing a requirement described in § 2605(a)(6) (governing manner or method of disposal of toxic substances) do not preempt state regulations. The result is that states remain free to impose certain regulatory burdens on the disposal of toxic substances. *See, e.g., Warren County v. State of North Carolina,* 528 F.Supp. 276, 289 (E.D.N.C.1981) (Congress intended to give states and localities some leeway to impose more stringent disposal requirements than those provided for by federal regulation).

PEPCO argues that because federal PCB regulations were promulgated under § 2605(e) and not under § 2605(a) of TOSCA, regulations cannot be considered as a rule imposing a requirement described in § 2605(a)(6). In effect, PEPCO is asserting that PCB disposal regulations are to be treated differently than disposal regulations of all other toxic substances regulated by the Administrator.

Plaintiff's assertion is irreconcilable with the plain language of the statute and would require a finding that the words "described in" have the same meaning as "promulgated under." The Court is unwilling to reach such a conclusion. In construing

---

3. The Court has accepted *amicus* briefs from the United States (on behalf of the EPA), the attorneys general of eight states (New York, California, Alabama, Ohio, Maine, Minnesota, Rhode Island, and Vermont), and the Chesapeake Bay Foundation. Although their arguments are not identical, all three groups argue strongly that Maryland's PCB disposal regulations are not preempted by § 2617 of TOSCA. The Court finds the EPA position to be of particular significance, in light of the fact that the EPA is the federal regulatory body whose preemptive authority is at issue in the case.

statutory language, courts must interpret the words according to their plain meaning. *Bouie v. City of Columbia,* 378 U.S. 347, 362–63, 84 S.Ct. 1697, 1707–08, 12 L.Ed.2d 894 (1964). The two phrases have entirely different meanings, and it is logical to conclude that the regulation of a substance can be promulgated under a separate provision of the statute but can nonetheless prescribe disposal requirements *described in* § 2605(a)(6). The words "described in" allow for a broader scope than the substances regulated under § 2605(a); they govern *any* requirement *describing* a disposal regulation.

By definition, then, any PCB disposal regulations promulgated under § 2605(e) are regulations imposing requirements *described in* § 2605(a)(6). *See SED, Inc. v. City of Dayton,* 519 F.Supp. 979, 987 (S.D. Ohio 1981) (the § 2605(e) rules do "impose a requirement *described in* subsection (a)(6) of § 2605," i.e., disposal restrictions and prohibitions. The parenthetical in no sense requires that nonpreemptive federal regulations actually be enacted under § 2605(a)(6)). (emphasis in original) *See also Chapperll v. SCA Services, Inc.,* 540 F.Supp. 1087, 1098 (C.D.Ill.1982) (deferring to EPA position that "state requirements regarding disposal of PCBs are completely exempt from federal preemption ...").

There is a clear explanation for Congress' having treated PCBs differently from all other toxic substances to be regulated by the Administrator. At the time of the passage of TOSCA, PCBs were already known to be extremely toxic, and Congress wanted to express a sense of urgency and a need for immediate regulation. As Senator Nelson stated, "[i]t is preferable not to enact legislation on a substance-by-substance basis, but rather generally, as the Toxic Substances bill proposes to do. However, the PCB problem shows no sign of abating and it has become so severe that it is necessary to address the problem head on...." *See* United States brief at 11 n. 15.

In effect, what Congress did by singling out PCBs as a toxic substance to be regulated, was to make the § 2605(a) determination for the Administrator that PCBs present an unreasonable risk of injury to health or the environment. *Dow Chemical Co. v. Costle,* 484 F.Supp. 101, 102 n. 1 (D.Del.1980). That was the practical effect of Congress' inclusion of the separate provision for PCBs. Contrary to the assertions of PEPCO, there is nothing in the legislative history of TOSCA to indicate that Congress intended that PCB disposal should be treated differently with respect to preemption than any other substance.[4]

The only fair reading of the statutory language of § 2617 compels one to the conclusion that federal PCB disposal regulations do not preempt state PCB disposal requirements. As the defendant acknowledged at oral argument, there is, of course, an "outer limit" to such a conclusion, *e.g.,* a state could not impose disposal requirements that frustrated the federal plan or violated the Commerce Clause. *Accord Chappell,* 540 F.Supp. at 1098 (state PCB disposal regulations not preempted if not less restrictive than the federal regulations). This case, however, does not present the Court with any such outer limits; rather, Maryland's disposal regulations[5] supplement existing federal disposal

---

**4.** PEPCO indicated at oral argument that there is language in some of the legislative history that indicates Congress was considering full preemption of state PCB regulations. That language is not at all conclusive, however, and must be read within the context of the entire Congressional debate. That context shows that Congress recognized the inherent interest of the States and political subdivisions respecting disposal of hazardous chemicals within their jurisdiction. United States brief at 16, quoting from the House Report on TOSCA.

**5.** There is some dispute as to whether the term "disposal" includes just spillage and removal or also storage for disposal. The Court finds that the term "disposal" includes storage for disposal as well as both spillage and removal. Notwithstanding its previous position to the contrary, the EPA considers that state regulations governing storage for disposal as well as actual disposal are free from preemption. *See* letter of EPA General Counsel A. James Barnes to defendant Sachs, Exhibit F, attached to Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment.

requirements and do not appear in any way to frustrate the overall federal plan. That result was fully within the contemplation of Congress.

## B. Applicable Case Law.

A number of judicial opinions have addressed the issue of whether state PCB disposal requirements are preempted by TOSCA, and there is unfortunately a considerable degree of inconsistency in their conclusions. The Court is persuaded, however, that the opinions which actually examined the statutory language and legislative history support the defendants' position that the state disposal requirements are not preempted.

For example, in *SED*, 519 F.Supp. 979, the plaintiffs sought declaratory relief in challenging city ordinances that regulated, restricted, or prohibited storage of PCBs. The Court correctly reasoned that PCB disposal requirements impose a requirement "described in" § 2605(a)(6). *Id.* at 987. It went on to conclude, however (erroneously, in this Court's opinion), that the structure of the statutory language nonetheless showed that Congress did not intend state PCB disposal regulations to survive under the parenthetical exception. As the United States points out in its brief at 20–21, the court in *SED* was correct in its first conclusion that the disposal regulations under § 2605(e) were "described in" § 2605(a)(6), but incorrect in its second conclusion that the parenthetical exception alone would not save the city's ordinance.[6]

In *Chappell*, 540 F.Supp. 1087, the plaintiffs brought a class action suit to recover damages for nuisance from the operator of a hazardous waste landfill. The court reviewed the statutory language of TOSCA and found that it was "reasonable to conclude that state laws relating to *disposal* of chemical substances are not preempted by the TSCA." *Id.* at 1098. (emphasis in original). The *Chappell* court read the language of § 2617(a)(2)(B) in conjunction with § 2605(a)(6)(B)[7] and agreed with the EPA's position that state PCB disposal regulations are not preempted. That reasoning is consistent with the Congressional intent behind TOSCA. As Representative Broyhill pointed out, "there is nothing in this act that affects the right of States to act in their authority over disposal of hazardous properties or hazardous chemicals...." Chesapeake Bay Foundation brief at 14.

In *Twitty v. North Carolina*, 527 F.Supp. 778 (E.D.N.C.1981), *aff'd without opinion*, 696 F.2d 992 (4th Cir.1982), a case upon which PEPCO relies, the owners of land adjacent to property designated as a hazardous waste landfill sought to enjoin the use of the land for that purpose. Among the five causes of action listed was one that the disposal of toxic waste, including PCBs, would violate a local county ordinance. In summary fashion, the district court rejected the argument, saying only that TOSCA preempts "any local ordinances." *Id.* at 781. The district court opinion in *Twitty* must, however, be read in conjunction with *Warren County v. State of North Carolina*, 528 F.Supp. 276 (E.D. N.C.1981), the companion case to *Twitty*, involving the same hazardous waste landfill. In *Warren County*, the court struck down a county ordinance that flatly prohib-

That view is entitled to "considerable deference" from the Court. *Chemical Manufacturers Association v. Natural Resources Defense Council*, 470 U.S. 116, 105 S.Ct. 1102, 1108, 84 L.Ed.2d 90 (1985).

6. Ultimately, the court in *SED* concluded that the City's ordinance was valid under the "other federal law" exception of § 2617. This Court expresses no views on that issue, concluding that the parenthetical exception alone permits Maryland to regulate PCB disposal.

7. Section 2605(a)(6)(B) provides in pertinent part that a disposal requirement issued by EPA

"may not require any person to take any action which would be in violation of any law or requirement of, or in effect for, a state or political subdivision...." The court in *Chappell* seemed to be recognizing that if this provision were to have any meaning at all, state disposal laws must remain in effect. As the Chesapeake Bay Foundation states, § 2605(a)(6)(B) "is premised on an assumption that state regulations on hazardous waste disposal will remain valid...." Chesapeake Bay Foundation brief at 11. That reasoning seems entirely correct.

ited the disposal of PCBs in the county as violative of the federal regulatory scheme envisioned by TOSCA. The court noted, however, that Congress intended to give states and localities some leeway to impose more stringent disposal requirements than those provided for by federal regulation. *Id.* at 289. Only an outright ban would be prohibited. That statement clearly limits the broad, summary language in *Twitty* which PEPCO invokes.

PEPCO places much reliance on a Fifth Circuit case, *Rollins Environmental Services (FS), Inc. v. Parish of St. James,* 775 F.2d 627 (5th Cir.1985). The plaintiff, a toxic waste disposal firm, brought suit against a local parish, challenging the legality of an ordinance whereby the parish had prohibited toxic waste disposal, including disposal of PCBs. The court found that the parish's ordinance was preempted by TOSCA but devoted most of its analysis to the question of whether the prohibition against "commercial solvent cleaning businesses" was in fact a sham for a prohibition against the disposal of PCBs. Ultimately the court did conclude that the ordinance was indeed a sham and that an outright prohibition on PCB disposal would frustrate the scheme of TOSCA for the handling of PCBs.

It was only in a footnote that the court addressed the issue of the applicability of the parenthetical exception. Reasoning that the EPA's PCB rules were promulgated under § 2605(e), not § 2605(a), the court concluded—without any analysis of the statutory language or legislative history—that the parenthetical exception did not apply. *Id.* at 634 n. 7. The Court does not regard this analysis as controlling.

The other cases relied upon by PEPCO contain similar analytical flaws. For example, in *Chemical Waste Management, Inc. v. Broadwater,* Civil Action No. 84–G–1208–W (N.D.Ala.1984) (Exhibit C, attached to Memorandum of Points and Authorities in Support of Motion for Summary Judgment), *appeal dismissed as moot,* 758 F.2d 1538 (11th Cir.1985), the plaintiff, a waste management company, sought preliminary injunctive relief from an order of a state environmental agency, on grounds of federal preemption under TOSCA. The order would have had the effect of closing a substantial portion of the operations of the hazardous waste treatment, storage, and disposal facility operated by the plaintiff. The court granted the preliminary injunction, finding that Congress' inclusion of a separate provision for PCBs rendered the parenthetical exception inapplicable. The court, however, did not evaluate the significance of the phrase "described in" and simply assumed that Congress meant to preempt PCB disposal, in addition to the other aspects of PCB handling.

Similarly, in *City of Middletown v. Hartford Electric Light Co.,* Civil Action No. 33133 (Conn.1981) (Exhibit D, attached to plaintiff's memorandum in support of motion for summary judgment), the court did not examine the issue in depth. In *Middletown,* the defendant utility company operated a high efficiency boiler and proposed to burn 30,000 gallons of PCB contaminated oil at the facility. The city sought injunctive relief in state court for alleged violations of the local zoning ordinances. The court determined that the parenthetical exception did not apply, because PCB regulations under TOSCA were promulgated under § 2605(e) and not § 2605(a)(6). Recognizing that "regulation of PCB disposal might appear to be authorized under Sec. 2605(a)(6)," the *Middletown* court reasoned that such a conclusion would render § 2605(e) (1)(A) (which requires the Administrator to promulgate PCB disposal rules) a nullity. *Id.* at 25.

That reasoning simply ignores the Congressional intent to allow states some freedom to regulate the disposal of PCBs as well as other toxic chemicals. *See Warren,* 528 F.Supp. at 289. As in *Rollins* and *Chemical Waste Management,* the court in *Middletown* failed to adequately analyze the actual language of the statute—specifically, the words "described in,"—and took no note of the legislative history of the statute.

A contrary conclusion would produce the anomalous result of prohibiting any state disposal regulation of the one substance that Congress found so toxic and dangerous that it required special attention in the statute. Congress recognized that the states should retain some control, under their respective police powers, to regulate disposal of toxic hazards posing a threat to the health and safety of their citizens. That is the very purpose of the parenthetical exception in § 2617(a)(2)(B). It turns Congressional intent on its head to argue that Congress would identify a substance as particularly toxic and at the same time emasculate all state efforts to regulate its disposal within state borders. Congress did intend to preempt certain activities related to PCBs, such as manufacture and transportation. With respect to disposal, however, Congress intended a result that would allow for both the states and the federal agencies to regulate the disposal of toxic substances in a cooperative effort.

### V.  CONCLUSION

Maryland's PCB disposal regulations are not preempted by § 2617 of TOSCA. Since Congress has determined that PCBs represent an unreasonable risk of injury to health or the environment, federal PCB disposal regulations are therefore "described in" § 2605(a)(6). Accordingly, the parenthetical exception contained in § 2617(a)(2)(B) applies, removing the preemptive effect of federal regulation over state disposal requirements. The states remain free to regulate the disposal of PCBs in a manner that ultimately does not frustrate the purpose of the federal goal of reducing the dangers from toxic substances.

Having determined that the resolution of the parenthetical exception issue conclusively answers the question presented in this case, the Court does not reach the three other exceptions in § 2617 which might provide additional bases upon which the State could argue that its disposal regulations are not preempted.

There are no outstanding issues of material fact with respect to this dispositive issue in this litigation. Notwithstanding the fact that the defendants have urged the Court to proceed to trial and have not filed any cross-motion for summary judgment, the Court finds that the defendants are entitled to judgment as a matter of law. Further proceedings on the merits would be pointless.

The Court therefore denies the plaintiff's motion for summary judgment and will enter an appropriate declaratory judgment order, consistent with this opinion.

### DECLARATORY JUDGMENT ORDER

On January 22, 1986, plaintiff, The Potomac Electric Power Company, filed its Verified Complaint for Declaratory Judgment herein, and contemporaneously filed Plaintiff's Motion for Summary Judgment, which was accepted by the Court for filing on February 11, 1986. Subsequently, on February 25, 1986, an opposition to plaintiff's motion was filed on behalf of defendants, Stephen H. Sachs, in his capacity as Attorney General of Maryland, and Adele Wilzack, in her capacity as Secretary of the Maryland Department of Health and Mental Hygiene. The Court considers the issues to have been fully briefed. The Court also had the benefit of oral argument presented by counsel for the parties at a hearing herein on March 27, 1986.

In accordance with the foregoing opinion of the Court, IT IS, this 16th day of April, 1986, ORDERED, ADJUDGED and DECREED as follows:

1. That Plaintiff's Motion for Summary Judgment BE, and the same hereby IS, DENIED.

2. That the laws and regulations of the State of Maryland which establish requirements governing the manner and method of disposal of polychlorinated biphenyls (PCBs) are not preempted by the provisions of the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.* (TOSCA).

3. That the defendants' costs in this litigation shall be borne by plaintiff.

4. That the Clerk shall transmit copies of the foregoing opinion and this Declaratory Judgment Order to counsel of record for the parties to this litigation.