**CITY OF CHESAPEAKE, Plaintiff,**

**v.**

**SUTTON ENTERPRISES, INC., Defendant.**

**Civ. A. No. 90–1291–N.**

United States District Court, E.D. Virginia, Norfolk Division.

Oct. 10, 1990.

Randy D. Singer, John Y. Pearson, Jr., Norfolk, Va., and Kathleen A. Dooley, Christiansburg, Va., for plaintiff.

Richard N. Shapiro, Virginia Beach, Va., for defendant.

## ORDER

DOUMAR, District Judge.

This matter came on for hearing on the plaintiff's motion to remand to the state courts and his objections to the magistrate's report, and on the motion of Richard N. Shapiro, counsel for the defendant, to withdraw his representation. The matter was fully argued in open court on October 4, 1990.

By order of this Court dated June 25, 1990, the motion to remand was referred to United States Magistrate William T. Prince to conduct hearings on the matter and to submit to the Court a report and recommendation. After hearing oral argument, Magistrate Prince recommended that the case be remanded. The defendant objected to the proposed findings of the Magistrate. The objections are OVERRULED. For the reasons set forth in Magistrate Prince's

report and recommendation, this case is ORDERED REMANDED to the Circuit Court of the City of Chesapeake.

Simultaneously with the granting of this order, Richard N. Shapiro is WITHDRAWN as counsel for the defendant, Sutton Enterprises, Inc. Richard N. Shapiro is DIRECTED to forward a copy of this order to his client, Sutton Enterprises, Inc.

IT IS SO ORDERED.

## MAGISTRATE'S REPORT AND RECOMMENDATION

WILLIAM T. PRINCE, United States Magistrate Judge.

### Order of Designation

United States District Judge John A. MacKenzie, by an order entered June 25, 1990, designated the undersigned magistrate to conduct a hearing and to submit to a judge of the court proposed recommendations for disposition by the judge of plaintiff's Motions to Remand and to Dismiss Defendant's Counterclaim, and defendant's Motion for Entry upon Land, Removal of Personal Property, and Temporary Injunctive Relief.

## STATEMENT OF THE CASE

### Facts as Alleged by Plaintiff

Defendant Sutton Enterprises (Sutton) operates a scrapyard in the City of Chesapeake, portions of which have become contaminated by polychlorinated biphenyls ("PCBs"), toxic materials requiring special handling and disposal in accordance with Environmental Protection Agency regulations. (Bill of Complaint, para. 3–4).

On February 6, 1990, an inspector of the Chesapeake Fire Department hand-delivered a written Notice of Violation executed by the city's fire marshal notifying Sutton that it was in violation of Chesapeake City Code 11–8, Article 1, Sec. F–106.1–9 and Article 28, Sec. F–2801.6 and ordering Sutton to acquire a contractor certified to handle PCBs to accomplish the removal and clean-up of the contaminated portions of the property. (Bill of Complaint, para. 6). In addition, under authority of Article 1,

Sec. F–106.6 of the Chesapeake City Code, the Notice ordered Sutton to evacuate the property and to discontinue operation until such clean-up was completed.

Sutton appealed this Notice of Violation to the Chesapeake Fire Prevention Appeals Board which denied the appeal. (Bill of Complaint, para. 7). Sutton did not thereafter appeal to the State Building Code Technical Review Board within the prescribed time period. (Bill of Complaint, para. 8). Sutton has failed to comply with the order of the Notice of Violation. (Bill of Complaint, para. 9).

### Procedural Background

The City of Chesapeake filed a Bill of Complaint against Sutton Enterprises in the Circuit Court of the City of Chesapeake on April 10, 1990, requesting the court, pursuant to the authority vested by Va. Code Ann. § 27–101, to order Sutton to do the following:

1. Within 48 hours of the court's order, acquire a contractor, duly licensed and certified to handle polychlorinated biphenyls who will accomplish the clean-up of the contaminated property.

2. Within 30 days of the court's order, finish the removal and clean-up of all combustible liquids and/or other hazardous materials located on the scrapyard, including areas contiguous to the scrapyard if contaminated.

On May 7, 1990, Sutton filed a Notice of Removal removing the case to the District Court for the Eastern District of Virginia, claiming subject matter jurisdiction based upon the Supremacy Clause of the United States Constitution, 15 U.S.C. § 2601, *et seq.* (the Toxic Substances Control Act (TSCA)), and 42 U.S.C. § 9601, *et seq.* (the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA or "Superfund")). Also on May 7, 1990, Sutton filed its Answer to the Bill of Complaint setting forth affirmative defenses of preemption by Congress of the subject of the City's cause of action and lack of statutory authority and statutory jurisdiction of the City to require Sutton to dispose of the PCBs.

On the same date, Sutton filed a Jury Demand and a Counterclaim against the City seeking damages for losses sustained by Sutton due to the City's illegal closure of its business. The Counterclaim also asked for a declaratory judgment that the City's regulations were void or preempted and that the City's clean-up requirements were void or preempted. Finally, the prayer for declaratory judgment asked the Court to declare the rights and duties of Sutton with respect to this matter.

On May 29, 1990, the City responded with a Motion to Dismiss Sutton's Counterclaim, with supporting memorandum, and a Motion to Remand the cause of action to state court, with supporting memorandum. On June 18, 1990, the City filed a Motion for Leave to File an Amended Complaint (submitted therewith) in the event the Court rejected the Motion to Dismiss and the Motion to Remand.

On June 19, 1990, Sutton filed a Memorandum in Opposition to the Motion to Remand, a Memorandum in Opposition to the Motion to Dismiss the Counterclaim, and a Motion for Entry Upon Land, Removal of Personal Property and Temporary Injunctive Relief, with supporting memorandum.

On June 25, 1990, the City filed a Reply Memorandum in Support of its Motion to Remand.

A hearing on the motions was held on June 26, 1990 at which plaintiff City of Chesapeake was represented by Randy D. Singer and John Y. Pearson, Jr., of Willcox & Savage, P.C., and Kathleen A. Dooley, of the City Attorney's Office, City of Chesapeake, and defendant Sutton Enterprises, Inc. was represented by Richard N. Shapiro, of Guy, Cromwell, Betz & Sykes, P.C.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Plaintiff's Motion to Remand

 If, at any time before final judgment on a removed case, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded to the state court from which it was removed. 28 U.S.C. § 1447(c). In the instant case, diversity of citizenship does not exist, so subject matter jurisdiction, if it exists, must be predicated upon federal question jurisdiction under which district courts have original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

In its Notice of Removal, Sutton asserts that federal question jurisdiction exists in this action due to preemption of the underlying subject matter of the case by Congress in enacting 15 U.S.C. § 2601, *et seq.* (the Toxic Substances Control Act (TSCA)) and 42 U.S.C. § 9601, *et seq.* (the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA or "Superfund")). In addition, Sutton cites the Supremacy Clause of the United States Constitution as a basis for jurisdiction.

In its brief in support of its motion to remand, the City argues that a defendant who wishes to remove an action to federal court cannot invoke federal question jurisdiction based upon the federal nature of an affirmative defense raised or a counterclaim asserted.

 It is well-established that whether a case is one arising under the Constitution or a law or treaty of the United States must be determined from what necessarily appears in the plaintiff's statement of his own claim, unaided by allegations made in anticipation of defenses to be raised by the defendant. *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914). Correspondingly, a defendant may not remove a case to federal court unless the *plaintiff's* pleading establishes that the claim "arises under" federal law, regardless of the federal nature of defenses available to defendant. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) (emphasis in original). In the same vein, the essence of a defendant's counterclaim cannot serve to create federal subject matter jurisdiction when the plaintiff's complaint presents a strictly state law claim. *Federal Deposit Ins. Corp. v. Elefant*, 790 F.2d 661, 667 (7th Cir.1986).

These long-accepted principles of the well-pleaded complaint rule are not disputed by Sutton, whose attorney, in his brief and at oral argument, stated that the basis for federal question jurisdiction in this case stems from the face of plaintiff's own complaint, not from a defense or counterclaim of defendant.

First, Sutton maintains that federal question jurisdiction is invoked by the allegation contained in plaintiff's complaint at paragraph 4, which states:

> Polychlorinated biphenyls are toxic environmental contaminants requiring special handling and disposal in accordance with Environmental Protection Agency regulations.

According to defendant, this statement in plaintiff's brief implicates federal law sufficient to raise a federal question conferring jurisdiction on this Court. Defendant states: "[T]he very relief requested by the City cannot be conducted by Sutton without reference and deference to EPA regulations which have preempted the entire field of PCB storage and disposal." (Sutton's Memorandum in Opposition to Motion to Remand at 13). Defendant relies on language in *Franchise Tax Board* in which the Supreme Court stated that a case "arises under" federal law where the vindication of a right under state law necessarily turns on some construction of federal law. 463 U.S. at 9, 103 S.Ct. at 2846 (citations omitted). Therefore, states defendant, because Chesapeake must rely on federal statutes and regulations to vindicate any relief it claimed in its complaint, this case necessarily invokes and requires the application of the Federal Toxic Substances Control Act thus establishing federal question jurisdiction.

Although mere reference to a federal statute in a state court pleading is, without more, insufficient to vest federal subject matter jurisdiction supporting removal, *id.*, defendant's argument does raise the question of whether the federal statute preempts the City ordinance, thus establishing federal question jurisdiction.

Federal preemption is ordinarily a federal defense to a plaintiff's state court suit. As a defense, it does not appear on the face of a well-pleaded complaint, and therefore, does not authorize removal to federal court. *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1935). One corollary of the well-pleaded complaint rule, however, is that Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character. *See Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (plaintiff's state court claims were preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 and removal by defendant was proper; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (plaintiff's state court claims were preempted by § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA) and thus removal by defendant was proper). The question thus becomes whether the TSCA and CERCLA statutes preempt state law and confer federal question jurisdiction so as to allow removal.

Plaintiff maintains that these statutes do not preempt the city ordinance and state fire prevention code, and that its cause of action against defendant is purely a state law matter; therefore subject matter jurisdiction of the federal court which would support removal of the case from the state court is lacking. Plaintiff maintains, in the alternative, that if the Court determines that subject matter jurisdiction exists, the Court should abstain from consideration of the case based on the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970).[1]

Following the analysis of the Fourth Circuit in *Potomac Elec. Power Co. v. Sachs*, 802 F.2d 1527 (4th Cir.1986)[2], discussed *infra*, this Court approaches these two issues, subject matter jurisdiction due to pre-

---

**1.** Plaintiff's abstention argument is contained within its Motion to Remand, but is treated here as a discrete motion.

**2.** See footnote 4 at page 474.

emption of the field and abstention, in the reverse order.

### Abstention

■ Under the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970), federal courts should, based on interests of comity and federalism, abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests. *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984). The underlying principle is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with ongoing state proceedings. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975) (applying principle to ongoing state criminal proceedings). The abstention principle has also been extended to ongoing civil state proceedings, including administrative proceedings of judicial character. *Kim–Stan, Inc. v. Dep't of Waste Management,* 732 F.Supp. 646, 648 (E.D.Va.1990).

■ Under *Younger,* abstention is proper when the following three requirements are met: (1) state proceedings are ongoing before the federal court engages in substantial proceedings on the merits, (2) the state proceedings present an opportunity for the federal claims to be raised, and (3) important state interests are at stake. *Kim–Stan, Inc. v. Dep't of Waste Management,* 732 F.Supp. at 648–49. In addition, the state proceeding must not be the result of bad faith or harassment. *Younger v. Harris,* 401 U.S. at 53–54, 91 S.Ct. at 755.

The first requirement of abstention, that there be ongoing state proceedings, is met only when state court proceedings are initiated "before any proceedings of substance on the merits have taken place in the federal court." *Kim–Stan, Inc. v. Dep't of Waste Management,* 732 F.Supp. at 649, quoting *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223

(1975). Thus it is necessary to determine both when state proceedings commenced and when proceedings of substance commenced in the federal court.

The Fourth Circuit has determined that "[i]f the ongoing state proceeding is judicial in nature, *Younger* abstention clearly applies." *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1228 (4th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1923, 109 L.Ed.2d 286 (1989).

■ In *Kim–Stan,* the operator of a sanitary landfill sued Virginia state officials for damages and an injunction to enjoin enforcement of an emergency special order which closed the landfill because of an unsafe discharge. In ruling on the state's motion to dismiss based on the abstention doctrine, Judge Merhige determined that, for two alternative reasons, state proceedings were ongoing before federal substantive proceedings commenced. First, because the state administrative proceedings initiated by the issuance of the emergency special order included a formal hearing with the possibility of an appeal through the Administrative Procedure Act, and were therefore judicial in nature, state proceedings were begun for purposes of the abstention doctrine. Second, the state agency's bill of complaint filed in the state circuit court commenced state proceedings before any federal proceedings on the merits occurred.

In the present case, the same alternative bases exist for finding that state court proceedings had commenced prior to federal proceedings. First, the Notice of Violation issued by the City on February 6, 1990 initiated state and local administrative proceedings, which included hearing and appeal provisions, judicial in nature, and therefore constituted the commencement of state proceedings prior to federal court involvement.

Second, the City originated court proceedings in this case by filing its bill of complaint in the state court on April 10, 1990, thus commencing the cause of action in state court. Sutton contends that the "ongoing state proceeding" requirement of

*Younger* is not satisfied in this case because "the only action begun in State Court has been immediately removed to federal court ...". (Sutton's Memorandum in Opposition to Motion to Remand at 23–24). The City's brief correctly responds to Sutton's contention: "This argument exalts form over substance. The state court claim is no longer ongoing only because it was removed by Sutton to Federal Court." (City of Chesapeake's Reply Memorandum in Support of Its Motion to Remand at 10).

The Court finds that, but for defendant's removal, which is a subject for review in a later section of this report, state court proceedings would be ongoing. In addition, no proceedings of substance have occurred in this case in the federal court. Therefore, the first requirement of the abstention doctrine is met.

The next requirement is that the state proceedings must present an opportunity for the federal claims to be raised. Specifically, in the present case, Sutton must be assured of the opportunity to raise its preemption claim as a defense to plaintiff's suit in the state proceeding, and have this issue duly addressed by the state forum.

In *Potomac Elec. Power Co. v. Sachs*, a power company was the target of a grand jury investigation for violations of the Health–Environmental Article of the Maryland Code relating to illegal PBC disposal. The power company brought an action for a declaratory judgment in federal district court seeking a declaration that provisions of TSCA preempted Maryland's laws and regulations on hazardous waste disposal.

The district court denied Maryland's motion to dismiss based on the *Younger* abstention doctrine, but ruled in the state's favor that Maryland's regulatory provisions governing disposal of PCBs were not preempted by the Toxic Substances Control Act. 639 F.Supp. 856 (D.Md.1986).[3] The Fourth Circuit reversed the district court holding that the federal court should have abstained from review of the case under the principles of *Younger v. Harris*. Therefore the appellate court failed to reach the merits of the preemption issue. 802 F.2d 1527 (4th Cir.1986).[4]

In *Potomac Electric*, the Fourth Circuit identified the "pivotal question" under abstention analysis as being whether the power company would have an adequate opportunity to present its preemption claim within the state court proceeding. *Id.* at 1531–32. After reciting federalism principles to the effect that "state courts are as capable as federal courts of deciding federal or constitutional issues", *id.* at 1531, the court stated that:

> While the Supreme Court has never analyzed the treatment of a preemption claim in applying the *Younger* doctrine, it appears to us that the same logic requiring abstention when there is a constitutional challenge to a state criminal statute applies to litigation where there is a claim of federal preemption due to a congressional enactment. *See Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (alternative claims of federal preemption and unconstitutionality of state criminal anarchy law not dis-

3. The district court's analysis of the preemption issue is addressed in the succeeding section of this report.

4. Following the Fourth Circuit's decision in *Potomac Electric*, the power company filed a petition for certiorari to the Supreme Court. While this petition was pending, Maryland informed the Court that it had suspended its criminal investigation of the power company. The Supreme Court then granted certiorari, vacated the judgment and remanded the case to the Fourth Circuit for further consideration in light of its then-recent decision of *Deakins v. Monaghan*, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), and to consider the question of mootness. 484 U.S. 1022, 108 S.Ct. 743, 98 L.Ed.2d 756 (1988). On remand, the Fourth Circuit

"agreed with [the parties'] position that there [was] no longer a controversy." 841 F.2d 90 (1988). Therefore, the case was remanded to the district court with directions to dismiss the cause as moot.

The Fourth Circuit's brief opinion did not discuss the implications, if any, of *Deakins* upon its prior holding in the *Potomac Electric* case. After review of *Deakins*, this Court determines that it is factually different from the present case and provides no reason to depart from traditional *Younger* abstention analysis. Likewise, the subsequent dismissal of *Potomac Electric* due to mootness does not undermine the soundness of the Fourth Circuit's analysis on the preemption issue.

tinguished). A state's interest in enforcing its criminal statutes remains undiminished until the statute is declared unconstitutional. *Likewise its enforcement interest remains undiminished until the statute is declared preempted or invalid for any other reason. It would strike us as anomalous to hold that a state court may decide federal constitutional issues but is unqualified or inhibited from deciding preemption issues.*

*Id.* at 1531, n. 7 (emphasis supplied). Therefore, as the Fourth Circuit determined in *Potomac Electric,* the claim of federal preemption is a claim which can and should, if the other elements are present, be addressed by the state court in the ongoing state court proceeding.

The third requirement for *Younger* abstention is that there must be important state interests at stake supporting state court disposition of the cause. Obviously, Virginia and its political subdivisions have a vital interest in the health and safety of their citizens. Protecting the environment from toxic substances is crucial to this interest. *See Kim–Stan, Inc. v. Dep't of Waste Management,* 732 F.Supp. at 652.

Finally, there is no evidence that the City has acted in bad faith or with an intent to harass in its prosecution of this case against Sutton.

Therefore, the requirements for the use of the *Younger* abstention doctrine are met and the federal district court should abstain from consideration of the case.

█ At the hearing, defendant submitted that, if the Court abstained from review of the case, it should retain federal review jurisdiction over the federal issues presented pursuant to the doctrine of *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). As pointed out by plaintiff, an *England* reservation of federal review is applicable to cases in which the federal court abstains from review because the case presents an unsettled question of state law [5] in addition to the federal claims.

This is not the case here. Here, abstention is recommended because the case meets the criteria of *Younger* abstention. Until and unless the state court determines that the law providing plaintiff's cause of action has been preempted by federal law, there is no federal claim of which this Court could reserve review.

### *Preemption*

If, after *de novo* review of any objections that may be filed by the parties, the district court declines to adopt the magistrate's recommendation that the Court abstain from review of the case, it will necessarily reach the issue of whether the city ordinance is preempted by federal statute so as to confer federal question jurisdiction upon the court. Therefore, this magistrate hereafter examines, reports on, and makes a recommendation with respect to plaintiff's motion to remand and the preemption issue raised by defendant in conjunction with this motion.

█ "It is well-established that within constitutional limits Congress may preempt state authority by so stating in express terms." *Pacific Gas & Elec. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), citing *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In the absence of an express preemption provision, Congress' intent to preempt state law may be found from a pervasive scheme of federal regulation that leaves the states no room to supplement the federal requirements or from a regulatory scheme in which the federal interest is dominant. Even where Congress does not entirely displace state regulation, state law is preempted to the extent that it conflicts with federal law or stands as an obstacle to the accomplishment of the purposes and objectives of Congress. *Pacific Gas & Elec.,* 461 U.S. at 203–04, 103 S.Ct. at 1721–22.

---

**5.** This type of abstention is known as "Pullman" abstention based on the case of *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

Plaintiff submits that it is unnecessary to address the preemption issue because, even if the local ordinance is preempted by federal statute, that is no basis for federal question jurisdiction supporting removal. (Plaintiff's Reply Memorandum in Support of Its Motion to Remand at 7). For this proposition, plaintiff relies upon *Chappell v. SCA Services, Inc.*, 540 F.Supp. 1087 (C.D.Ill.1982) and cases cited therein. However, this proposition is called into question by more recent Supreme Court cases, including *Franchise Tax Board* and its progeny which recognize removal jurisdiction when complete preemption by Congress of a body of law occurs and Congress manifests an intent to make causes of action within the scope of the statute removable to federal court. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

The test for determining if complete preemption has occurred is whether the "preemptive force" of the federal statute is "so powerful as to displace entirely any state cause of action" under the state or local law. If total displacement exists, such a suit is "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [the federal statute]." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. at 23, 103 S.Ct. at 2854.

At this point it is necessary to examine the federal statutes to determine if preemption has occurred, thus conferring federal question jurisdiction and thus supporting removal.

■ As pointed out by plaintiff, the plain language of the Comprehensive Environmental Response, Compensation, and Liability Act makes it clear that Congress never intended to preempt state and local officials from enforcing supplementary laws:

Nothing in this chapter shall be construed or interpreted as preempting any state from imposing additional liability or requirements with respect to the release of hazardous substances within such state.

42 U.S.C. § 9614(a).

Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants ...

42 U.S.C. § 9652(d). *See also Boone v. DuBose*, 718 F.Supp. 479 (M.D.La.1988). ("Congress did not expressly or inferentially intend for federal law to be preemptive when it enacted CERCLA and the amendments thereto.").

■ Whether Congress intended that the Toxic Substances Control Act preempt state and local law in situations such as the one presented here is not so clear-cut. As noted by Judge Black in *Potomac Elec. Power Co. v. Sachs*, 639 F.Supp. 856 (D.Md.1986), *rev'd*, 802 F.2d 1527 (4th Cir. 1986), *vacated and remanded*, 484 U.S. 1022, 108 S.Ct. 743, 98 L.Ed.2d 756 (1988), *dismissed as moot*, 841 F.2d 90 (4th Cir. 1988): "A number of judicial opinions have addressed the issue of whether state PCB disposal requirements are preempted by TSCA, and there is unfortunately a considerable degree of inconsistency in their conclusions." Indeed, the Court has found no way to reconcile the decisions rendered on this issue; to agree with one is necessarily to disagree with another. In fact, frequently it is difficult to reconcile these cases with themselves; as point in fact, many of the cases cited in the briefs were cited by both parties in support for each of their positions. The wide range of opinion can be attributed to the fact that the TSCA statute and the applicable E.P.A. regulations are almost forbiddingly complex.

Many of the previously-cited cases concerned instances of implied preemption. In the present case, Congress explicitly addressed the preemption issue in the Toxic

Substances Control Act at 15 U.S.C. § 2617 which states:

### § 2617 Preemption

(a) Effect on State law

(1) Except as provided in paragraph (2), nothing in this chapter shall affect the authority of any State or political subdivision of a State to establish or continue in effect regulation of any chemical substance, mixture, or article containing a chemical substance or mixture.

(2) Except as provided in subsection (b) of this section—

(A) * * *

(B) if the Administrator prescribes a rule or order under section 2604 or 2605 of this title (other than a rule imposing a requirement described in subsection (a)(6) of section 2605 of this title) which is applicable to a chemical substance or mixture, and which is designed to protect against a risk of injury to health or the environment associated with such substance or mixture, no State or political subdivision of a State may, after the effective date of such requirement, establish or continue in effect, any requirement which is applicable to such substance or mixture, and which is designed to protect against such risk, unless such requirement—

(i) is identical to the requirement prescribed by the Administrator,

(ii) is adopted under the authority of the Clean Air Act or other Federal law, or

(iii) prohibits the use of such substance or mixture in such State or political subdivision (other than its use in the manufacture or processing of other substances or mixtures).

(b) Exemption—

* * * * * *

The statutory scheme starts with the premise that no state regulation is preempted until the Administrator promulgates a rule governing that substance. Then, once the Administrator promulgates such a rule, state law is preempted unless it comes within the exceptions listed in the statute, of which there are four. The first is contained in the parenthetical clause stating "(other than a rule imposing a requirement described in subsection (a)(6) of section 2605 of this title)"; the remaining three are listed at the end of § 2617(a)(2)(B). *Potomac Elec. Power Co. v. Sachs*, 639 F.Supp. 856 (D.Md.1986). In addition, subsection (b) provides that states or localities may apply for exemptions from subsection (a)(2) under certain conditions.

In *Potomac Electric*, the district court was called upon to determine if Maryland's regulations concerning PCB disposal as a hazardous waste under its waste management program were preempted by federal law. Judge Black held that the state regulations fell within the parenthetical exception and were therefore not preempted. *Id.* at 860.[6]

In the instant case, the City alleges defendant violated, *inter alia*, the following provision of the City of Chesapeake Fire Prevention Code[7]:

§ F–106.1–9

Whenever the fire official or the fire official's designated representative shall find in any building, structure or upon any premises dangerous or hazardous conditions or materials as follows, the fire official shall order such dangerous conditions or materials to be removed or remedied in accordance with the provisions of this Code:

* * * * * *

9. Dangerous or unlawful amounts of combustible, explosive or otherwise hazardous materials.

---

6. Because *Potomac Electric* was subsequently reversed by the Fourth Circuit on the abstention issue, the appellate court declined to address the preemption issue. 802 F.2d 1527 (4th Cir.1986).

7. The city's Fire Prevention Code is promulgated under the authority of, and its provisions are considered supplements or amendments to, the Virginia Statewide Fire Prevention Code. The quoted provision is identical in the two codes.

The City maintains that PCBs constitute a hazardous material within the meaning of the Fire Prevention Code and that, under authority of § 27–101 of the Code of Virginia, the City is authorized to order defendant to clean up the hazardous material in a manner in compliance with local, state, and federal regulations.

The Court accepts the City's position and finds that the City's regulations are applicable to disposal of materials containing PCBs. Therefore, because both the City's regulations in this case and the Maryland regulations in *Potomac Electric* concern disposal of PCBs, the analysis and conclusion of Judge Black in *Potomac Electric* are applicable to the present case.

In *Potomac Electric,* the state submitted that the parenthetical exception contained in § 2617(a)(2)(B) was applicable to PCB disposal regulations, which were therefore not preempted. *Id.* at 860. This position was echoed in amicus briefs filed by the United States (on behalf of the EPA[8]), the attorneys general of eight states and the Chesapeake Bay Foundation. The power company argued that because PCBs were treated in a separate provision of the statute (§ 2605(e)), all state PCB regulations—including those relating to disposal—were preempted. *Id.*

"Because of the obvious importance of this issue and the conflict in the relevant judicial opinions," *id.*, Judge Black engaged in a thorough analysis of the question of whether the state statute at hand fell within the parenthetical exception. He thereafter reviewed the conflicting judicial opinions that have addressed the issue of whether state PCB disposal requirements are preempted by TSCA[9] and concluded that, "The Court is persuaded ... that the opinions which actually examined the statutory language and legislative history support the ... position that the state disposal requirements are not preempted." *Id.* at 861–62.

For the reasons outlined in Judge Black's comprehensive analysis of the TSCA preemption provision, supporting legislative history, and pertinent case law, this Court concludes that the City of Chesapeake ordinance is not preempted by TSCA.

### Plaintiff's Motion to Dismiss Defendant's Counterclaim

As concluded in the preceding discussion, the federal court should decline consideration of this case based upon the abstention doctrine, or, in the alternative, should remand the case to the state court based upon lack of federal subject matter jurisdiction to support removal because the substance of plaintiff's claim has not been preempted by federal law. Under either alternative, the case will be proceeding in the state court; therefore, as a matter of judicial economy, it is considered unnecessary for the undersigned magistrate to address plaintiff's motion to dismiss defendant's counterclaim at this time.

### Plaintiff's Motion for Leave to Amend Its Complaint

At the hearing, defendant stated that it did not oppose the Court granting plaintiff leave to amend its complaint in the event the case remains in federal court. Therefore this motion is not presented here for consideration.

### Defendant's Motion for Entry Upon Property, Removal of Property, and Injunctive Relief

At the hearing, the parties indicated that rather than argue this motion at that time, they wanted to try first to settle the matters upon which this motion was based. The Court was later notified that no action by the Court was needed on this matter, therefore this motion is not before the Court at this time.

### RECOMMENDATION

It is recommended that plaintiff's Motion to Abstain be GRANTED, and, in the alter-

---

8. Judge Black found it particularly significant that the EPA, the regulatory body whose preemptive authority was at issue, claimed that the state regulations were not preempted by TSCA. *Id.* at 860, n. 3.

9. The cases analyzed are, for the most part, the same cases cited by the parties in support of their respective positions.

native, that plaintiff's Motion to Remand be GRANTED. No recommendation is submitted on plaintiff's Motion to Dismiss Defendant's Counterclaim because granting of either of the previous motions divests the federal court of this case in favor of the state court. If objections to both recommendations are sustained, it is assumed that the District Judge will either redesignate the magistrate to consider the plaintiff's Motion to Dismiss Defendant's Counterclaim or himself or herself consider that motion at the time the objections are considered.

In addition, no recommendations on defendant's Motion for Entry Upon Land, Removal of Personal Property, and Temporary Injunctive Relief and plaintiff's Motion for Leave to Amend Its Complaint are made as those motions are not presently before the Court.

*Directions for Mailing and Review*

The clerk shall mail copies of this Report and Recommendation to counsel of record for the parties. The attention of counsel is called to 28 U.S.C. § 636(b) regarding review procedure.

Norfolk, Virginia

August 10, 1990.