COMMONWEALTH OF VIRGINIA, ex
rel. Jerry W. KILGORE, Attorney
General, Plaintiff,

v.

BULGARTABAC HOLDING
GROUP, Defendant.

No. CIV.A. 304CV842.

United States District Court,
E.D. Virginia,
Richmond Division.

March 3, 2005.

Francis S. Ferguson, Esquire, Anne Marie Cushmac, Esquire, Office of the Attorney General, Richmond, VA, for Plaintiff.

John A. Gibney, Jr., Esquire, Thompson & McMullan, Richmond, Suzette B. Peyton, Esquire, Law Offices of Tom Nebel PC, Nashville, TN, for Defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

This matter is before the Court upon the Plaintiff's Motion To Remand To State Court (Docket No. 12). For the reasons outlined below, the motion is DENIED.

### I.

On August 27, 2004, the Commonwealth of Virginia *ex rel.* Jerry Kilgore, Attorney General ("Commonwealth") filed a complaint against Bulgartabac Holding Group ("Bulgartabac") alleging that the defendant knowingly failed to comply with the requirements of Va.Code § 3.1–336.2, a part of the Virginia Tobacco Escrow Statute, VA. CODE ANN. § 3.1–336.1 to –336.16 (Michie 2004), which requires non-signatories of a certain settlement agreement to create "a reserve fund to establish a source of compensation" for harm to public health. 1999 Va. Acts chs. 714. The Commonwealth sought a mandatory injunction to compel Bulgartabac's compliance with the statute and to enjoin further violations. The Commonwealth also sought imposition of a statutory fine. Bill of Complaint ¶ 1.

The Virginia General Assembly enacted Va.Code § 3.1–336.2 as companion legislation to a settlement agreement, entitled the Master Settlement Agreement ("MSA"), between leading tobacco product manufacturers ("tobacco signatories") and forty-six States, including the Commonwealth ("settling states")[1]. The MSA obligates original and subsequent tobacco signatories to make payments to the settling states, to fund a national foundation created to further public health interests, and to accept advertising and marketing restrictions aimed at reducing underage smoking. In exchange, the settling states released the tobacco signatories from past, present, and future liability on claims seeking to recover increased health care costs due to smoking related illnesses. Pl.'s Mem. Supp. at 1–4. To offset a potential unfair competitive advantage, legislatures in the settling states enacted statutes intended to force some responsibility upon non-signatory tobacco product manufacturers.

A non-signatory of the MSA, Bulgartabac is one of the leading tobacco companies in Central and Eastern Europe,[2] with its principal place of business in Sofia, Bulgaria. "The structure of the [holding group] includes tobacco buying, processing and leaf trade, *manufacturing and export of cigarettes*, research and development."[3] The Republic of Bulgaria is the majority shareholder in Bulgartabac, owning 79.76% of the shares in the company. Defendant's

---

1. The MSA also included the District of Columbia, Puerto Rico, and four United States territories. Memorandum In Support Of Plaintiff's Motion To Remand To State Court at 1 ("Pl.'s Mem. Supp. at ___").

2. See Website for Bulgartabac Holding Group at *http://www.bulgartabac*.bg/aboutus.html (last visited Feb. 10, 2005).

3. *Id.* (emphasis added).

Response To Motion To Remand at 1 ("Def.'s Resp. Mot. at ___").

The Commonwealth served Bulgartabac by serving the Secretary of the Commonwealth on September 16, 2004, which certified compliance with the Virginia service of process statute five days later. On October 15, 2004, the Commonwealth filed a Motion for Entry of Judgment by Default against Bulgartabac. On October 27, 2004, Bulgartabac requested that the Attorney General agree to an extension of time to file a response. On November 17, 2004, Bulgartabac filed a Petition for Removal of the state action to federal court pursuant to 28 U.S.C. §§ 1441 & 1603, asserting that, as an instrumentality of a foreign state, Bulgartabac had a statutory right to remove. Pl.'s Mem. Supp. at 7.[4] On December 17, 2004, the Commonwealth filed Plaintiff's Motion to Remand to State Court.

In its Motion to Remand, the Commonwealth contends that the Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94–583, 90 Stat. 2891 [hereinafter "FSIA"] does not grant Bulgartabac immunity from the jurisdiction of state courts and that the Eleventh Amendment bars removal. Alternatively, the Commonwealth argues that the Court should abstain from hearing the case. Pl.'s Mem. Supp. at 8–11. Bulgartabac responds that removal was proper under the FSIA and 28 U.S.C. § 1441(d), and that States as plaintiffs cannot assert an Eleventh Amendment bar to removal. Bulgartabac also contends that the elements necessary to justify abstention are not satisfied. Def.'s Resp. Mot. at 2–6.

## II.

■ Pursuant to the FSIA, both federal and state courts have the authority to make immunity determinations. 28 U.S.C. § 1602 ("Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter."). The FSIA grants immunity to a foreign state, or instrumentality of a foreign state unless one of the enumerated exceptions applies. *See* 28 U.S.C. §§ 1604–1607. Where an enumerated exception eliminates the immunity, the FSIA expressly provides that both federal and state courts have jurisdiction over the matter. 28 U.S.C. § 1602(a) ("A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States ...."). One of the most common exceptions is 28 U.S.C. § 1605(a)(2), the commercial exception, which grants jurisdiction over foreign states in cases that are "based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere ...."

In cases where an exception applies and, therefore, a foreign state is not immune from jurisdiction, 28 U.S.C. § 1441(d) provides that:

> [a]ny civil action brought in a State court against a foreign state as defined in section 1603(a) of this title ... may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending.

Thus, Congress created a right of removal for the foreign state, provided that the foreign state meets the definitional requirement. Under 28 U.S.C § 1603(a), a

---

4. The Commonwealth does not contest the timeliness of the removal and agrees that, if removal is proper, there is good cause for enlarging the time for removal under 18 U.S.C. § 1441(d).

" 'foreign state' ... includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." Subsection (b) defines an instrumentality of a foreign state as:

any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, *or a majority of whose shares or other ownership interest is owned by a foreign state or* political subdivision thereof, and (3) which is neither a citizen of a State of the United States ... nor created under the laws of any third country.

28 U.S.C. § 1603(b) (emphasis added).

Bulgartabac qualifies as an instrumentality of a foreign state under 28 U.S.C. § 1603(a) & (b). The company is a separate legal entity, incorporated in the Republic of Bulgaria[5] which owns 79.76% of the corporation's outstanding shares. However, if, as alleged, Bulgartabac is an instrumentality of a foreign state in the business of selling tobacco products in the Commonwealth,[6] the company is not entitled to immunity from the jurisdiction of the courts of the United States or of the States. 28 U.S.C. § 1605(a)(2).[7] Nevertheless, Bulgartabac has the right to remove the state court action to federal district court pursuant to § 1441(d).

Notwithstanding that Bulgartabac has the right to remove, the Commonwealth argues that the Eleventh Amendment precludes removal in cases where one of the several States is a party. Alternatively, the Commonwealth argues that the doctrine of abstention applies, and, therefore, the Court should refrain from exercising its jurisdiction over the matter. Those contentions are considered seriatim.

## III.

■ The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. The Commonwealth argues that the Eleventh Amendment bars Bulgartabac from making the Commonwealth an involuntary party to an action in a federal court, whether by suit or by removal of a state action. In support of its position, the Commonwealth relies on *Moore v. Abbott Laboratories, Inc.*, 900 F.Supp. 26 (S.D.Miss.1995) and *California v. Steelcase, Inc.*, 792 F.Supp. 84 (C.D.Cal. 1992).

In *Abbott Laboratories*, the State of Mississippi filed an action against several pharmaceutical companies alleging violations of state antitrust and consumer protection laws. The defendants removed the case to federal court on the grounds of diversity of citizenship and federal question jurisdiction. The State moved to re-

---

5. Defendant indicates that Bulgartabac's correct name in Bulgaria is Bulgartabac–Holding, AD. Disclosure Pursuant to Order of January 13, 2005 at 1. Bulgartabac–Holding. AD is registered with the Sofia City Court, with seat and registered address in the City of Sofia, Republic of Bulgaria. Kostov Aff. ¶ 1.

6. *See* http://www.bulgartabac.bg/t_cigarettes.html ("The main directions for tobacco export of Bulgartabac companies, based in Bulgaria are as follows: Europe, The Near and The Middle East, Latin America, North America and Africa.") (last visited Feb. 10, 2005).

7. Bulgartabac contends that it does not sell cigarettes in Virginia. However, whether removal is proper depends on the allegations of the pleadings and thus, for purposes of the motion to remand, it will be assumed that Bulgartabac sells cigarettes in Virginia, as alleged.

mand, arguing that the Eleventh Amendment applied equally to actions brought against a State in federal court and to State actions filed in state court, which were subsequently removed to federal court without the State's consent.

The decision in *Abbott Laboratories* was based on *Steelcase*, which, without citing an authority, concluded that, because the Eleventh Amendment grants to the States an "immunity from being made an involuntary party to an action in federal court,"[8] the Amendment should apply with equal force to actions instituted by the state and then removed to federal court. The court in *Abbott Laboratories* considered the reasoning in *Steelcase* persuasive, because that rationale kept the State from being "involuntarily subjected" to the jurisdiction of the federal courts. *Moore v. Abbott Laboratories,* 900 F.Supp. at 30.

Since *Abbott Laboratories,* a number of courts have addressed the issue presented here and have concluded that the Eleventh Amendment does not create a jurisdictional bar when the State is the plaintiff in a removed action. *See California ex rel. Lockyer v. Dynegy, Inc.,* 375 F.3d 831 (9th Cir.2004); *Oklahoma ex rel. Edmondson v. Magnolia Marine Transport Co.,* 359 F.3d 1237 (10th Cir.2004). *See also California ex rel. Lockyer v. Transcanada Power L.P.,* 110 Fed.Appx. 839, 841, 2004 WL 2315717 (9th Cir.2004) (following the reasoning of *Dynegy* ); *New Hampshire v. Amerada Hess Corp.,* 2004 U.S. Dist. LEXIS 20972 (S.D.N.Y. October 19, 2004) (finding *Steelcase* and *Abbott Laboratories* unpersuasive); *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.,* 2000 WL 33952258, 2000 U.S. Dist. LEXIS 22406 (E.D. Mo. April 13, 2000) (determining that the Eleventh Amendment is not a bar to removal where the State is the plaintiff); *Missouri ex rel. Jeremiah W. v.*

*Coeur D'Alene Tribe,* 1997 WL 603834, 1997 U.S. Dist. LEXIS 14980 (W.D.Mo. Sept. 29, 1997) (holding that the same argument made here is against the weight of established Supreme Court precedent and the language of the Eleventh Amendment itself).

Virtually every decision holding that the Eleventh Amendment is not a bar to removal has based its reasoning on two Supreme Court decisions, *Illinois v. City of Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) and *Ames v. Kansas,* 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482 (1884). Citing *Ames,* the decision in *City of Milwaukee* recites that: "where a State is suing parties who are not other States, the original jurisdiction of this Court is not exclusive[,] and ... suits 'may now be brought in *or removed to* the [District Courts] without regard to the character of the parties.'" 406 U.S. at 101, 92 S.Ct. 1385 (quoting *Ames,* 111 U.S. at 470, 4 S.Ct. 437) (alteration in original) (citations omitted) (emphasis added).

In *Magnolia Marine,* the United States Court of Appeals for the Tenth Circuit relied on that text in holding that "the State may not assert its Eleventh Amendment immunity to preclude defendants' removal of the tort action it brought against them in its own courts." 359 F.3d at 1239–40. The Tenth Circuit was the first court of appeals to confront the precise issue presented here. Its analysis is instructive. Specifically, the Tenth Circuit highlighted that "the Supreme Court has never construed the Eleventh Amendment 'to apply to suits in which a state is solely a plaintiff.'" *Regents of the Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d 1559, 1564 (Fed.Cir. 1997) (upholding transfer over *Eleventh Amendment* objection without recourse to principles governing territorial reach of

8. *California v. Steelcase,* 792 F.Supp. at 86.

immunity waiver 'because this case does not create the *Eleventh Amendment* jurisdictional issue concerning which the question of waiver even arises'). *Magnolia Marine*, 359 F.3d at 1239 (emphasis in original).

The Ninth Circuit subsequently faced the same question in *Dynegy*, wherein the State of California had sued several power companies in state court, alleging violations of state unfair competition law. The Ninth Circuit held that "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction." *Id.* at 848.

At the outset of its analysis, the Ninth Circuit underscored that the States' sovereign immunity " 'neither derives from nor is limited by the terms of the Eleventh Amendment.' " *Id.* at 844 (quoting *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)). As the Supreme Court has explained: "the sovereign immunity reflected in (rather than created by) the Eleventh Amendment transcends the narrow text of the Amendment itself." *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 688 n. 5, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

Against that backdrop, the Ninth Circuit reached its decision by tracing the Supreme Court's treatment of the Eleventh Amendment from *Cohens v. Virginia*, 19 U.S. 264, 6 Wheat. 264, 5 L.Ed. 257 (1821) (holding that the Eleventh Amendment covered suits brought by individuals, not suits brought by States).[9] Having done that historical analysis, the Ninth Circuit observed that while the State hoped "to avoid the federal forum, it voluntarily appeared in state court to press its claims against the companies, who predictably sought removal to what they perceived to be a more favorable forum." *Dynegy*, 375 F.3d at 848. The court held that "a state that voluntarily brings a suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal." *Id.*

For the foregoing reasons, and as explained in the great weight of authority, Bulgartabac is not precluded by the Eleventh Amendment from removing the action commenced by the Commonwealth in state court to a federal court of competent jurisdiction.

**IV.**

 As an alternative basis for remand, the Commonwealth asserts that the doctrine of abstention established in *Younger v. Harris*,[10] counsels remand to state court. *Younger* abstention is predicated on the concept that "interests of comity and federalism counsel federal courts to

---

**9.** *See, Ames*, 111 U.S. at 470, 4 S.Ct. 437 (1884) (holding that the Constitution does not exempt the States from removal when the suit is "cognizable in the courts of the United States on account of the nature of the controversy"); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (broadening the conception of sovereign immunity beyond the literal text of the Eleventh Amendment); *Gunter v. Atlantic Coast Line Railroad Co.*, 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477 (1906) (acknowledging the principle that Eleventh Amendment immunity can be waived, and concluding that a state waives immunity when it sues in federal court); *City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (affirming *Ames* despite the more expansive view of sovereign immunity enunciated in *Hans v. Louisiana*); *Lapides v. Board of Regents*, 535 U.S. 613, 620, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) (identifying suits against the States for money damages as "the heart of the Eleventh Amendment's concern").

**10.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). Of course, consideration of *Younger* must take place in perspective of "the basic proposition that 'abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Employers Resource Management Co. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir.1995) (quoting *Hawaii Housing Authority*, 467 U.S. at 236, 104 S.Ct. 2321). In fact, the "doctrine of abstention is 'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Employers Resource Management, id.* at 1134 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).

 *Younger* abstention is appropriate when three conditions are satisfied: (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity to present the federal claims in the state proceeding. *See id.* at 1134. In this action, there is no ongoing state judicial proceeding. There, of course, was a proceeding in state court (*i.e.* this action) until it was properly removed to this Court under 28 U.S.C. § 1441(d). Accordingly, there is no warrant to abstain under the *Younger* doctrine.

The Commonwealth relies on the decision in *City of Chesapeake v. Sutton Enterprises, Inc.*, 138 F.R.D. 468 (E.D.Va. 1990), which found an extant state proceeding in the removed case itself because "but for the defendant's removal, ... state court proceedings would be ongoing." *Id.* at 474. The facts of this action differ somewhat from those presented in *City of Chesapeake* because that case did not involve a foreign sovereign or instrumentality. But, in truth, the factual difference does not provide a basis for distinguishing the decision or its rationale. However, the decision in *City of Chesapeake* is difficult to reconcile with the concept of federal removal jurisdiction generally and with the right of removal accorded foreign sovereigns and their instrumentalities under 28 U.S.C. § 1441(d).

In that regard, it is necessary to recall that, once the notice of removal is filed, the state court is divested of any jurisdiction over the action. Indeed, the federal statute prohibits further action of any sort by the state court. *See* 28 U.S.C. § 1446(d) (stating that, once a civil action is properly removed, the "State court shall proceed no further unless and until the case is remanded"); *see also Burroughs v. Palumbo*, 871 F.Supp. 870, 871 (E.D.Va.1994) ("[T]he filing of the notice of removal in the state court terminates the state court's jurisdiction."). And, after removal, nothing remains in the state court because all orders issued in the state court before removal travel to the federal court in the removal proceeding. *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); *Wichita Royalty Co. v. City National Bank*, 95 F.2d 671 (5th Cir.1938), *aff'd*, 306 U.S. 103, 59 S.Ct. 420, 83 L.Ed. 515 (1939). Thus, as of the time of removal, the removed action is not pending in the state court. It is extant only in the federal court to which it was removed. For that reason, the removed case cannot satisfy the threshold facet of *Younger* abstention.

Moreover, to consider the removed action as still pending in state court would be to negate the removal rights of foreign

sovereigns and instrumentalities created by § 1441(d). That is because a State always could skirt the removal right by invoking *Younger* abstention. It is difficult to envision a suit brought by a State on the basis of a state statute against a foreign sovereign that would not implicate state interests. And, it is the unusual case which cannot satisfy the third *Younger* factor.[11]

For these reasons, *Younger* abstention is inappropriate.

## CONCLUSION

For the reasons set forth above, the Plaintiff's Motion to Remand to State Court (Docket No. 12) is denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

---

**11.** Indeed, this factor is not, at least, as of now implicated in this proceeding. That is because *Younger* abstention generally does not involve a case in which the State is a plaintiff. Whether the absence of this issue, standing alone would defeat *Younger* abstention is not an issue presented by the parties, and thus it will not be addressed.